The errors pointed out render it unnecessary to consider exceptions taken to portions of the charge of the trial justice.

We are of opinion also that the demurrer to the indictment should have been sustained, as the same does not conform substantially to the requirements of sections 275, 276, 279 of the Code of Criminal Procedure. (*People* v. *Dumar*, 106 N. Y. 502; *People* v. *Corbalis*, 178 N. Y. 516.)

For the reasons stated the judgment of the Appellate Division should be affirmed.

HISCOCK, Ch. J., COLLIN and ANDREWS, JJ., concur; CARDOZO, POUND and CRANE, JJ., vote to modify judgment of Appellate Division by providing for granting a new trial instead of dismissing indictment.

Judgment affirmed.

---

CATHERINE DONOHUE, as Administratrix of the Estate of ANDREW DONOHUE, Deceased, Appellant, *v.* EAST RIVER MILL AND LUMBER COMPANY, Respondent.

**Negligence — when error for the Appellate Division to reverse judgment for plaintiff and dismiss the complaint on ground that the evidence was insufficient.**

Where in an action under the Employers' Liability Act, to recover for the death of an employee who was killed by a fall from a stack of lumber while climbing to the top thereof in pursuance of an order from his foreman, there is evidence sufficient to permit the jury to find that the usual and customary way by which an employee could reach the top of a stack of lumber, like the one in question, had not been provided by the defendant, it was for the jury to say whether or not the plaintiff's intestate met his death by reason of a defect in the ways and plant of his employer, and whether or not the defend-

ant was guilty of negligence. It was error, therefore, for the Appellate Division to reverse the judgment for plaintiff, entered on the verdict of the jury and dismiss the complaint on the ground that plaintiff failed to show negligence on the part of the defendant and that the death of the intestate was caused by his own negligence. The burden of proof upon the question of contributory negligence rested upon the defendant, and the fact that the intestate was injured by reason of using the way that defendant had furnished him does not justify the inference of contributory negligence on his part.

*Donohue* v. *East River M. & L. Co.*, 171 App. Div. 935, reversed.

(Argued June 12, 1918; decided July 12, 1918.)

APPEAL from a judgment, entered January 19, 1916, upon an order of the Appellate Division of the Supreme Court in the first judicial department, reversing a judgment in favor of plaintiff entered upon a verdict and directing a dismissal of the complaint.

The nature of the action and the facts, so far as material, are stated in the opinion.

*George B. Covington* and *Bernard G. Heyn* for appellant. The failure of the defendant company to follow the customary practice in building a lumber pile of this kind without steps or other adequate means of access to the top of the pile, such as ladders of proper length, constituted negligence. In order to sustain the dismissal of the complaint, the defendant has the burden of showing by uncontradicted proof that the negligence of plaintiff's decedent contributed to the accident, and the evidence for such purpose must be so certain and convincing that no reasonable mind could reach the conclusion that the decedent had been negligent. (*Maloney* v. *Cunard Steamship Co.*, 217 N. Y. 278; *Seyford* v. *Southern Pac. Co.*, 216 N. Y. 613; *Wiley* v. *Solvay Process Co.*, 215 N. Y. 585; *Bohnhoff* v. *Fischer*, 210 N. Y. 172; *Siegel* v. *American Seating Co.*, 161 App. Div. 54; 216 N. Y. 759; *Flanagan* v. *Carlin Construction Co.*, 134 App. Div. 236; *Rich* v. *Pelham Hod Elevating Co.*, 23 App. Div. 246.)

*Lyman A. Spalding, Ambrose F. McCabe* and *John H. Jackson* for respondent.   The affirmative evidence, which is not disputed, establishes that there were means of reaching the top of pile A, which were adequate and safe, and no charge of negligence against the defendant in regard thereto was established.   (*Kennedy* v. *Robins Co.*, 154 App. Div. 819; *Luther* v. *Standard L., H. & P. Co.*, 208 N. Y. 383; *Carlsen* v. *McKee*, 129 App. Div. 652.)   The testimony of plaintiff's and defendant's witnesses establishes as a matter of law that safe ways were provided by defendant to reach the top of pile A from the southeast corner of which decedent fell. (*Johnson* v. *N. Y. C. & H. R. R. R. Co.*, 173 N. Y. 79; *Hull* v. *Littauer*, 162 N. Y. 569.)

HOGAN, J.   The plaintiff's intestate was employed by defendant in a lumber yard operated and conducted by the latter in the city of New York.   On or about January 20th, 1913, the intestate while in the act of ascending to the top of a pile of lumber fell and as a result thereof was killed.   The present action was brought under the Employers' Liability Act to recover damages for the death of the intestate by reason of the alleged negligence of defendant in the plant, ways and appliances which were alleged to have been in an improper condition, unsafe and unsuitable for the work the intestate was directed to perform and by reason of direction of the superintendent in orders to the intestate to proceed to such unsafe place and ways to perform the work.

The plaintiff recovered a verdict at the Trial Term. A motion for a new trial was made by defendant on all the grounds stated in section 999 of the Code, except as to the amount of damages.   The judgment entered upon the verdict for plaintiff was reversed by the Appellate Division and the complaint dismissed on the ground plaintiff failed to show negligence on the part of the

defendant and that the death of the intestate was caused by his own negligence.

The lumber business is conducted by defendant upon an extended scale. In the yard in which the intestate was employed, generally speaking there were from three hundred to four hundred piles or stacks of lumber. The stack of lumber in question was about twenty-five or twenty-six feet high, about eighteen feet in width and from fourteen to fifteen feet long, composed of timber three by nine inches and from fourteen to fifteen feet in length. As shown by the evidence adduced on behalf of plaintiff the customary way of piling such lumber is to place a foundation underneath the front of the pile, which elevates the front about eight inches higher than the rear end, thus providing a sloping surface to prevent water lodging on the lumber and destroying it. Every eight or ten courses of timbers are crossed to admit of air to prevent decay. The sides and face or front of the pile were perpendicular. The rear of the pile was not regular and even like the front and sides, but, by reason of the varying and different lengths, was uneven. The front of the stack of timber where the accident occurred, referred to in the evidence as " A," faced the west or Avenue A; the rear faced the east or river; the south faced Ninety-third street. Northeasterly of the stack in question was a stack of lumber referred to in evidence as " P." The southwest corner of the latter stack started some few feet southerly of and near to the north- east corner of stack " A " in question and quite close to the same and ran in a northerly direction. The space south of pile " P " and east of pile " A " was vacant.

On the day of the accident one Dinnin was directed, as testified by him, by either the superintendent or Davitt, the foreman, to load a truck with timber from stack " A " and the intestate was directed to assist him. The sub-boss, or foreman, was called by the defendant and

testified it was he who gave the orders to Dinnin and the intestate. Dinnin went to the northeast corner of stack " A " and climbed to the top of the stack by straddling his feet from stack " A " to the stack " P " as far as he could work his way up until he reached a projecting piece of timber near the top and finally landed on top of pile " A." In the meantime the intestate remained on the ground. Dinnin was handing down pieces of timber to the intestate and the latter was engaged in passing the timber to a truck driver who was on the southerly side near to the southeast corner of stack " A." Dinnin called to the intestate to come to his assistance on top of the pile of timber. Thereupon the intestate started to climb upon the easterly or rear end of the stack near to the southeast corner, the only side of which stack the ends of the timbers were uneven. He reached a point about seven or eight feet from the top of the stack, and had placed his hands on the top and was feeling around for a footing when he slipped, fell backward, struck some lumber near the corner and was killed.

A number of witnesses were called to testify on behalf of the plaintiff as to the usual and customary way of piling timber such as that which constituted pile " A " where the accident occurred. Having described the foundation and method of piling as hereinbefore referred to, the witnesses stated that the usual and customary way was after the stack had reached a point about four feet from the ground a step is made, that is a piece of timber is left protruding from the stack about two feet starting from one corner on the front side of the pile, the next step protruding in the same way, about eighteen inches to two feet apart, like a stairway and would so run until the steps reached the opposite corner of the pile when they are reversed and continued until within eighteen inches or two feet of the top.

Evidence was also offered on behalf of the plaintiff tending to show that no steps of any description were upon the stack or pile " A " where plaintiff was directed to work. The only place on the stack on which he could ascend was on the rough ends on the rear.

At the close of the case the evidence was sufficient to permit the jury to find that the intestate was directed to assist Dinnin in removing timber from the stack; that the usual and customary way in which an employee would reach the top of a stack of lumber like the one in question had not been provided by the defendant; that the intestate in attempting to carry out the instructions given him climbed up on the rear end of the stack of lumber where the lengths of the timbers were to some extent uneven and projected; that he fell while attempting to reach and draw himself to the top of the stack, and met his death by reason of a defect in the ways and plant of the employer.

It was for the jury to say whether or not defendant should in the exercise of reasonable care have provided steps upon any one of the three perpendicular sides of the stack of timber, or whether the way provided was safe.

The evidence on the part of the defendant would also require the holding that there was a question of fact for the jury as to the negligence of the defendant. The fact that defendant had not provided any means upon the stack whereby an employee could ascend to the top of the stack of lumber was not controverted by defendant's witnesses, but evidence was adduced from them that when the timber is of one length it is customary to have steps, but if the timber is of different length the men utilize the long lengths in the back to go up. The better method of putting steps in every pile of lumber where it is possible to put them on is " a matter of judgment." The witness Johnson, superintendent of

defendant, testified that steps are placed on stacks when timbers are of one length but if different lengths steps are not employed as a man can climb up on projecting pieces.

The jury found that defendant was guilty of negligence. The remaining question is, was the intestate guilty of negligence as a matter of law. The burden of proof upon the question of contributory negligence rested upon the defendant. The case on the part of the plaintiff was sufficient, *prima facie*, to establish defendant's negligence. The evidence offered on behalf of plaintiff was not uncertain or susceptible of a conclusion that the intestate was lacking in the exercise of reasonable care at the time of the accident. Death had closed his lips and the evidence of witnesses to the accident did not tend to disclose that he was careless. The fact that he was injured by reason of using the way the defendant had furnished him does not justify the inference of contributory negligence on his part. (*Maloney* v. *Cunard Steamship Co., Ltd.*, 217 N. Y. 278; *Seyford* v. *Southern Pacific Company*, 216 N. Y. 613.) The questions of negligence of the defendant and of the intestate were properly submitted to the jury. The defendant upon a motion for a new trial did not question the amount of the recovery or suggest that the same was excessive.

Other evidence in the case as to the presence of ladders on the premises and steps upon a pile of lumber north of pile " P " whereby one could ascend to a pile and then cross to pile " P " and thence climb up to pile " A " does not change the fact that questions of negligence and contributory negligence were still for the jury.

The judgment of the Appellate Division should be reversed and new trial granted, costs to abide event.

HISCOCK, Ch. J., COLLIN, CARDOZO, POUND, CRANE and ANDREWS, JJ., concur.

Judgment reversed, etc.