JOHN GRIMES, as Surviving Member of the Firm of GRIMES, OSTER & GRIMES, Claimant, *v.* THE STATE OF NEW YORK, Defendant.

### Claim No. 17234.

Court of Claims, May, 1923.

**Claims against the state — injury to horse on towpath — when state not liable.**

Plaintiff with a team was driving along the towpath of the Black River canal in the city of Rome, N. Y. As the team came upon a wooden sluiceway extending through the towpath the timbers and planking broke and one of the horses was precipitated into the sluiceway receiving injuries from which it soon after died. Both the sluiceway and the towpath were within the blue line of the

canal and for many years had been maintained as part of the canal system of the state and were used by the public as a short cut highway between two of the city streets. *Held*, that neither at the time of the accident nor now was the state bound to keep the towpath in condition for use by trespassers.

The plaintiff having no permission from the state to use the towpath was a trespasser within section 186 of the Canal Law and his claim for damages for the loss of the horse will be dismissed upon the merits.

*Donahue* v. *State*, 112 N. Y. 142, followed.

CLAIM for injuries received by defective sluiceway on tow path.

*M. J. Larkin*, for claimant.

*Julius Tumposky*, deputy attorney-general, for the state of New York.

ACKERSON, P. J.   On the 11th day of May, 1920, the claimant's team was being driven on and along the tow path of the Black River canal in the city of Rome, N. Y., between East Downing street and Whitesboro street near what is known as lock No. 1.

In passing along this portion of the said tow path, the said team was driven over a wooden sluiceway extending through the tow path.   As the team came upon the sluiceway, the timbers and planking thereof broke and threw or precipitated one of the horses into the sluiceway whereby the horse received injuries from which it soon thereafter died.   The sluiceway and towing path in question were within the blue line of the canal and, therefore, the property of the state.

This towing path and sluiceway had for many years been maintained by the state as part of its canal system and had been used for many years by the public as a highway to go back and forth as a short way from East Downing street to Whitesboro street.

Claimant's horse was valued at $200, and he seeks to recover that amount from the state as damages for the loss of his horse.

Claimant proceeds upon the assumption that because the state for years had permitted claimant and others of the public to drive upon the tow path in question without objection that it thereby became to all intents and purposes a public highway; that such user imposed a duty upon the state to maintain said towing path in a reasonably safe and proper condition for public traffic; and furthermore, that the state would be liable in damages to the general public for injuries to person or property resulting from the negligence of the state in maintaining said towing path.   Such in brief as we understand it is the contention of the claimant here.

With this contention we cannot agree.   In the first place, the claimant in driving upon the tow path was a trespasser.

Section 186 of the Canal Law reads in part as follows: "A person, not engaged in towing a boat or other float upon or conveying articles

unladen or to be laden from or to a canal, who leads, drives or rides any horse, ox, mule, ass or other cattle upon the towing path of a canal or upon the bank opposite to such towing path, within the blue line of the canal, shall forfeit to the state the sum of five dollars.''

This express provision of statute had not been waived by the state at the time of this accident, and applied to the towing path in question. Neither had the claimant received any permission from the state to use the said towing path. He was, therefore, a trespasser and the state was not bound then nor is it now to use any degree of care to keep its towing path in condition for use by trespassers. Of course, like all other property owners it may not place upon its property spring guns, dangerous traps, pitfalls, etc., whereby trespassers would be unduly injured without notice. But outside of that the state owes no duty to a trespasser except to abstain from injuring him intentionally.

But even though we overlook the trespass of the claimant and hold that under the continued user of the towing path in question the general public had acquired at least what might be termed a license to use this towing path as a highway arising by implication from long-continued use with the knowledge and acquiescence of the state, yet, even then the claimant would be in no better position to establish his claim.

The Court of Appeals in the case of *Donahue* v. *State of New York,* 112 N. Y. 142, settled the law applicable to this case. There was a situation very similar to that which confronts us here. Many years ago the state had constructed a feeder of the Champlain canal running through the city of Cohoes. It was covered with timbers and planks upon which earth had been laid to the depth of several feet. Its surface had been made use of for more than twenty years by the public as a highway and it was known as Champlain street in the city of Cohoes; but it was never laid out as a street or highway by virtue of any municipal or other authority. The claimant in that case fell through the covering of the feeder. The timbers supporting this covering had become weakened by decay so that they were not strong enough to sustain claimant's weight and they broke and precipatated her into the feeder. She thereby sustained personal injuries and in a claim which she filed against the state demanded that she be compensated therefor.

The Board of Claims dismissed the claim in that case and Judge Gray, writing the opinion in the Court of Appeals affirming the award, used this language: '' The most that can be said in favor of appellant's contention is that the state suffered the use of this strip of its canal for purposes of passage over or upon it; but it

was merely by sufferance that it was so used, and not by any agreement or permission. Nor did the state owe any active legal duty to protect those who so made use of its land. It owed a duty to abstain from injuring the plaintiff, either carelessly or intentionally; but it owed her no duty of active vigilance to see that she was not injured, while upon the land for her own convenience. *Splittorf* v. *State*, 108 N. Y. 205, 214."

That is exactly the situation here and the law thus laid down by the court of last resort is decisive of this case.

The case of *McCaghey* v. *State of New York*, 118 Misc. Rep. 439, recently heard by this court, involved almost the identical question before us here. Our decision there holding the state not liable has just been unanimously affirmed by the Appellate Division, third department. 206 App. Div. ——. See, also, *Cusick* v. *Adams*, 115 N. Y. 55; *Fox* v. *Warner- Quinlan Asphalt Co.*, 204 id. 240.

The claim of the claimant herein must, therefore, be dismissed upon the merits.

WEBB, J., concurs.

Judgment accordingly.