MONA YERDEN, as Administratrix of the Estate of LLOYD H. YERDEN, Deceased, Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 29193.)

Court of Claims, September 11, 1950.

*Eugene H. Klein* and *James J. Barrett* for claimant.

*Nathaniel L. Goldstein, Attorney-General (Donald C. Glenn* of counsel), for defendant.

GORMAN, J. Claimant seeks to recover damages for the death of her intestate, Lloyd H. Yerden, resulting from an accident which occurred at the Jamesville Reservoir on June 26, 1948. Liability of the State would be predicated on the alleged negligence of its officers and employees in failing to properly maintain the reservoir and in neglecting to warn bathers of submerged stones which, it is alleged, created a trap and a nuisance.

The Jamesville Reservoir was completed about 1875 as a feeder for the Erie Canal. A dam constructed across Butternut Creek just south of Jamesville, Onondaga County, New York, created a body of water covering about 252 acres, with a spillway elevation of 639.62 feet. Following abandonment of the Erie Canal in 1918, the reservoir was utilized as a feeder for the Barge Canal and continues to be so used at the present time.

In addition to the land now under water, the State acquired certain contiguous property along the westerly side, which is used in connection with canal purposes. At the time of construction of the dam and to protect it from damage by erosion, the adjacent bank was riprapped from the dam southerly along the westerly shore for several hundred feet. The riprap consisted of large, rough, loose stones, 2 feet by 10 to 18 inches, weighing 150 to 200 pounds, placed along the bank from elevation 628.2 on a slope of approximately 1 to 1 to elevation 642.8. Prior to June 26, 1948, and on that day, there was an area of 10 to 15 feet, located about 100 feet south of the dam where some of the riprap had been dislodged or removed. This condition was obvious, and did not impair the usefulness of the wall for the purpose for which it was constructed. It is claimant's contention that certain of these stones had slipped into the water and that decedent was fatally injured by striking one of them while diving from the wall.

It is undisputed that Jamesville Reservoir had been used by the public for bathing and swimming purposes for many years. It is also undisputed that the property was not maintained by the State as a recreational or park area as such. The Department of Public Works had erected signs prohibiting trespassing on the dam and swimming at night after 10:00 P.M. It is urged that the long continued use of the premises for bathing purposes to the knowledge of the State authorities, coupled with the existence of the latter sign, constituted an implied invitation to the

public and decedent to swim in the reservoir up to ten o'clock at night. The accident happened at about 7:30 P.M.

The circumstances which may offer or sustain an implied invitation cannot be tested by any general and invariable rule. In the absence of some relation which inures to the mutual benefit of the owner or occupant of the property and the injured person, or to the former alone, it is generally held there is not an implied invitation on the part of the former. (*Heskell* v. *Auburn Light, Heat & Power Co.,* 209 N. Y. 86, 91; *Walsh* v. *Fitchburg R. R. Co.,* 145 N. Y. 301, 305; 4 Shearman and Redfield on Negligence [Rev. ed.], § 779. ) '' There must at least be some mutuality of interest in the subject to which the visitor's business relates ''. (*Plummer* v. *Dill,* 156 Mass. 426, 427; *Meiers* v. *Koch Brewery,* 229 N. Y. 10, 13.) Decedent was not upon the State's land in connection with canal navigation purposes nor on any other business except his own convenience. There can be no doubt that the acquiescence of the State for so long a time, amounted to an implied license. The posting of the regulatory sign after complaints of improper conduct in the nighttime, further constituted a revocable permission to swim until 10:00 P.M. But neither or both, we think, implied an invitation. (*Vaughan* v. *Transit Development Co.,* 222 N. Y. 79, 82; *Panunzio* v. *State of New York,* 266 App. Div. 9, affd. 292 N. Y. 625; *Fischer* v. *Amity Harbor Corp.,* 237 App. Div. 196.) The Superintendent of Public Works had the right to warn people that swimming after 10:00 P.M. was illegal. (Canal Law, §§ 10, 86.) He could issue revocable permits in his discretion granting limited privileges for the temporary use of the premises. But no liability of the State would ensue for any damage on account of the granting or revocation of any such permit. (Canal Law, § 100.) '' ' Permission involves leave and license, but it gives no right.' '' (*Sterger* v. *Van Sicklen,* 132 N. Y. 499, 505; *Donahue* v. *State of New York,* 112 N. Y. 142.) It is subject to revocation at any time. (*Walsh* v. *Fitchburg R. R. Co.,* 145 N. Y. 301, 305, *supra.*) While decedent was lawfully upon the premises, he had no right as against the State, to be there. There was no mutuality of interest nor advantage to the State. He was there by permission, for his own convenience and his status was that of a bare licensee.

The record is devoid of proof that at the time of the accident the State, by any affirmative act, changed conditions existing at the scene or created new perils there. The land had been acquired and maintained for use in connection with canal navigation and for no other purpose. The construction thereon was

sufficient and safe for the purpose for which it was intended. The State was under no obligation to make it safe, or keep it in any particular condition for the benefit of decedent. (*Birch* v. *City of New York,* 190 N. Y. 397, 403; *Carbone* v. *Mackchil Realty Corp.,* 296 N. Y. 154.) If an injury is sustained by reason of a mere defect in the premises, the owner is not liable for negligence, for such person has assumed the risk. (*Cusick* v. *Adams,* 115 N. Y. 55, 59; *Mendelowitz* v. *Meisner,* 258 N. Y. 181, 184; *Garthe* v. *Ruppert,* 264 N. Y. 290, 294.) The only duty the State owed decedent was to abstain from affirmative acts of negligence or intentional injury. (*Morse* v. *Buffalo Tank Corp.,* 280 N. Y. 110; *Parry* v. *State of New York,* 193 Misc. 875.)

The claim is dismissed.